## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (NORTHERN DIVISION)

| | |
|---|---|
| **In-N-Out Burger** )<br>4199 Campus Drive, 9th Floor, )<br>Irvine, California 92612 )<br>   )<br>          Plaintiff,   )<br>   )<br>**v.**   )<br>   )<br>**Grab-N-Go Burgers**  )<br>1005 Beards Hill Road )<br>Aberdeen, Maryland 21001 )<br>   )<br>*Serve On:*   )<br>   F. Gus Siperko Jr., CPA  )<br>   Resident Agent  )<br>   2686 Camel Court  )<br>   Manchester, Maryland 21102  )<br>   )<br>          Defendant.   ) | Civil Action No.: 1:11-cv-2296 |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff In-N-Out Burger Inc., ("In-N-Out" or "Plaintiff"), by and through its undersigned counsel, files this Complaint for trademark infringement, trade dress infringement, and trademark dilution and seeks a Preliminary Injunction, Permanent Injunction, and Damages, against Grab-N-Go Burgers ("Grab-N-Go" or "Defendant").

## NATURE OF THE CASE

1. This is a Civil Action under the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq.*, for trademark and trade dress infringement and trademark dilution pursuant to § 43(a) and § 32 and of the Trademark Act of 1946 (the Lanham Act), as amended, 15 U.S.C. § 1125(c) and § 1114.

## THE PARTIES

2. Plaintiff In-N-Out Burger is a corporation duly organized and existing under the laws of the State of California, with its corporate offices located at 4199 Campus Drive, 9th Floor, Irvine, California, 92612.

3. Upon information and belief, Defendant Grab-N-Go Burgers is a Maryland corporation with its principal place of business at 1005 Beards Hill Road, Aberdeen, Maryland 21001. Defendant Grab-N-Go also operates a restaurant at 1111 Beards Hill Road, Ste. 200, Aberdeen, Maryland, 21001.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1338(a) as a federal question pertaining to trademarks.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) as Defendant resides here, has committed acts of infringement here, and/or has a regular and established place of business here and is thus subject to personal jurisdiction in this judicial district.

## ALLEGATIONS OF FACT

6. In-N-Out has been engaged in the business of restaurant services and other businesses since 1948, and currently has 260 restaurant locations in five states.

7. In-N-Out owns numerous federally registered trademarks and service marks comprising the words IN-N-OUT (U.S. Reg. Nos. 1,085,163; 1,522,799; 1,525,982; 1,101,638; and 1,101,628) and/or IN-N-OUT BURGER (U.S. Reg. Nos. 1,031,095; 1,031,096; 1,023,506; 1,528,455; 1,539,451; 1,528,456; 1,516,560; 2,026,720). In-N-Out also owns numerous federal registered trademarks and service marks comprising a yellow arrow. (U.S. Reg. Nos. 1,031,096;

1,023,506; 1,646,401; 1,539,451; 1,528,455; 1,528,456; 1,516,560; 1,514,689; 1,522,799; 1,525,982; 1,960,015; 1,877,603; 2,026,720; 2,106,744; and 3,367,471) The foregoing registrations are valid and subsisting and are in full force and effect. Pursuant to 15 U.S.C. § 1065, all but the most recent registration, namely U.S. Reg. No. 3,367,471, have become incontestable. Information from the United States Patent and Trademark Office regarding the registrations cited in this paragraph is attached as **Exhibit A** hereto.

8. Since long prior to the acts of Defendants herein alleged, In-N-Out has continuously used color schemes that are primarily white with red accent trim and red and yellow featured in the signage and trim. In-N-Out owns numerous federal registrations which incorporate its red and yellow color scheme. (U.S. Reg. 1,528,455; 1,516,560; and 1,525,982). Collectively, the marks described in paragraphs 7 and 8 shall be referred to herein as the "IN-N-OUT Marks." Information from the United States Patent and Trademark Office regarding the registrations cited in this paragraph is attached as **Exhibit B** hereto.

9. Since long prior to the acts of Defendant herein alleged, In-N-Out has continuously used trade dress consisting of a combination of features, including a red-and-white color scheme with other minor accent colors such as yellow; employee uniforms that are white with red aprons and hats; interior flooring featuring a checkerboard pattern with white and gray tile; an open interior layout so that customers can observe the food preparation—including the slicing of fresh (never frozen) potatoes to make fries; a seating area including booths with white tables and red-backed seats. In addition, the interior menu is typically displayed above the cash register on a rectangular-shaped predominantly white menu board with a red frame and red lettering. The menu board features only a few items, no size options, and a simple font and presentation. A similar predominantly white with red menu board is found outside near the

drive-through lanes.  The outside of the building typically incorporates the red-and-white color scheme with other minor accent colors such as yellow.  In addition, the food presentation is in rectangular cardboard boxes, with the hamburger partially wrapped with the unwrapped side face up and accompanied by French fries in a second, generally rectangular white boat-like structure (served with a white paper napkin covering the fries).  This scheme and overall image and the like is of such an unusual design that a customer would immediately rely on it to differentiate the source of the services; in addition, the scheme and overall image and the like have been used in interstate and intrastate commerce and in connection with the advertising, promotion, offering, and provision of its products and services consistently and continuously by In-N-Out.

10. In-N-Out also has a secret menu or unpublished menu, and in connection therewith has, for many years, offered various off-menu items or preparation styles sold under the trademarks Protein® Style burger, Animal® Style burger, 3 x 3® burger, and 4 x 4® burger.  The Animal® Style burger is comprised of a burger with the standard toppings and, additionally, grilled onions, pickles, and extra sauce.  Information from the United States Patent and Trademark Office regarding the registrations for the Animal® Style burger is attached as **Exhibit C** hereto.

11. In-N-Out has offered its products under its unique IN-N-OUT Marks and trade dress, and the In-N-OUT Marks and trade dress have continuously appeared at In-N-Out's locations and in its advertising and promotional activities.  In-N-Out has extensively used and promoted the IN-N-OUT Marks and trade dress such that they are closely identified with the goods and services of In-N-Out.

12. The IN-N-OUT Marks and trade dress have received widespread public recognition and unsolicited media coverage throughout the United States.  The IN-N-OUT

Marks have been promoted and featured in depth in many significant national publications, including the New York Times, Newsday, Daily News, the New York Post, the Washington Post, the Chicago Tribune, and USA Today, and on national radio and television programs, including the Tonight Show, the Tonight Show with Conan O'Brien, Marketplace (a radio show syndicated through American Public Media), and Fox News.

13. In addition, In-N-Out was the subject of a book titled "In-N-Out Burger: A Behind-the-Counter Look at the Fast-Food Chain That Breaks All the Rules" by Stacy Perman, published in 2009 by HarperCollins, which was a New York Times Bestseller. In-N-Out was also praised in the 2001 book titled "Fast Food Nation: The Dark Side of the All-American Meal" by renowned investigative journalist Eric Schlosser. "Fast Food Nation," which was published by Houghton Mifflin, was also a New York Times bestseller.

14. The recent opening of In-N-Out restaurants in Texas received unsolicited, nationwide media coverage, which included reporting on the enthusiasm of In-N-Out's fans: one fan cried at the opening of a store in Frisco, Texas, and others camped out overnight to be first in line when the restaurants opened for the first time. According to these media reports, each of the openings in Texas drew hundreds of customers and resulted in lines of 100 people or more.

15. In-N-Out has also received widespread public recognition on the Internet. Websites such as HuffingtonPost.com and SeriousEats.com have posted unsolicited, nationwide coverage on In-N-Out. In-N-Out Burger has more than 2.1 million fans of its official Page on Facebook (Facebook.com is the most visited website in the United States and currently the most frequently used social networking website).

16. In-N-Out has consistently and repeatedly won national awards. In 2008, In-N-Out won the Sandelman & Associates' 2008 Quick-Track Awards of Excellence. In 2009, In-N-

Out won the Zagat's survey award for the nation's best fast food burger, followed by Wendy's, Burger King and McDonald's, and in 2010 In-N-Out came in second in the same category. The Zagat 2010 survey also recognized In-N-Out in the top five large fast food chains, which also included Panera Bread, Chipotle Mexican Grill, Inc., Five Guys Burgers and Fries, and Chick-fil-A, Inc. In-N-Out was featured on www.delish.com as one of the twenty-five best burgers around the country. In-N-Out was also recognized as the No. 1 best fast-food chain by The Top 13, a website nationally known for its rankings of the best in pop culture.

17.   Also in 2010, In-N-Out was tied with Five Guys Burgers and Fries as the best fast food burger in a national Consumer Reports survey of more than 28,000 individuals. The Consumer Reports survey was reported in national news media such as CNNMoney.com. In-N-Out was also recently recognized by Food & Wine Magazine as having one of the 25 best burgers in the nation, and nationally recognized celebrity chefs such as Gordon Ramsey, Thomas Keller, Anthony Bourdain, Mario Batali, and Julia Child have publicly stated their affection for In-N-Out. In-N-Out has also been featured repeatedly in Nation's Restaurant News magazine.

18.   The IN-N-OUT Marks are valid and subsisting and are evidence of In-N-Out's exclusive right to use said trademarks in commerce throughout the United States for restaurant products and other goods and services related thereto.

19.   As a result of the care and skill exercised by In-N-Out in the conduct of its business, the high quality of In-N-Out's products offered under its trade dress and IN-N-OUT Marks, the unique nature of the trade dress and the extensive advertising, sale and promotion of In-N-Out's products including the same, the trade dress and IN-N-OUT Marks are either inherently distinctive or have acquired strong secondary meaning. The trade dress and IN-N-OUT Marks identify In-N-Out's popular products as those of In-N-Out exclusively, and

distinguish them from the products of others. The distinctive trade dress and IN-N-OUT Marks are well known and symbolize the goodwill that In-N-Out has created by its offering of its products.

20. In-N-Out has continued to expand its restaurants to locations outside of California. It has moved into Utah and Texas within the last few years. In-N-Out's expansion to Texas was made possible in part by the establishment of a new beef-processing plant and distribution center, making further expansion possible.

21. In addition, In-N-Out maintains and promotes a website, www.in-n-out.com. In conjunction with the website, In-N-Out operates a retail company store at http://shop.in-n-out.com that offers for sale items such as hats, T-shirts, sportswear, mugs, water bottles, and other accessories displaying In-N-Out's registered trademarks. In-N-Out's online store is advertised and promoted nationwide and is accessible nationwide.

22. Consumers from across the country visit the In-N-Out website and retail store, and In-N-Out ships merchandise from its online company store across the country, including into the State of Maryland.

23. From the period of June 2010 through July 20, 2011, In-N-Out's web site, www.in-n-out.com, received at least 158,228,721 hits nationwide. Of those, 637,330 hits came from the State of Maryland, and at least 40,219 visitors to the web site were residents of the State of Maryland.

24. From 2008 to the present, In-N-Out has sold nearly $30,000.00 in merchandise from its online retail store to Maryland residents.

25. In-N-Out's Marks are in use in and around Maryland through In-N-Out's web site and merchandise sales to Maryland residents, and In-N-Out has therefore entered the Maryland

market.

## DEFENDANT'S WRONGFUL ACTS

26.  On information and belief, Defendant is operating a restaurant named Grab-N-Go at 1005 Beards Hill Road, Aberdeen, Maryland, 21001.  The restaurant is clearly modeled after In-N-Out's restaurants.

27.  The name of the restaurant, particularly the use of "N" as short for the word "and," the menu selection, the red, yellow, and white color scheme, and the interior design, including white tile walls with a red stripe, all mirror design elements of In-N-Out restaurants. The name on the interior and exterior of Defendant's restaurant is Grab-N-Go. The words Grab-N-Go are depicted in red block letters in a typeface identical to that used in In-N-Out's trademarked logo.  The name Grab-N-Go is also depicted in conjunction with a curved circular design element in the color yellow in a manner that is highly similar to In-N-Out's use of the trademarked phrase "In-N-Out" in conjunction with a bent yellow arrow.

28.  In addition, Grab-N-Go's menu boards are similar to In-N-Out's menu boards in that they use the similar logo, white background, and block letters.  Moreover, Grab-N-Go offers a "Wild Style Burger" that contains ingredients identical to the Animal® Style burger offered by In-N-Out.  Pictures of Grab-N-Go's restaurant and menu and examples of In-N-Out's restaurants and menu boards are attached hereto as **Exhibit D**.

29.  On June 29, 2011, In-N-Out contacted the Defendant and requested that it cease and desist use of its current logo design, eliminate the white tiles and red stripe on the interior walls, and change the current design and font of the menu boards.  To date, the parties have been unable to resolve the dispute and upon information and belief, Defendant continues to use the same logo and interior and exterior décor.

30. The use by Defendant of such colorable imitations of the IN-N-OUT'S Marks and trade dress is likely to cause confusion, mistake, or deception, as those encountering Defendant's business may mistakenly assume that said business is in some way sponsored, endorsed, approved by, or connected with In-N-Out when in fact it is not.

31. IN-N-OUT's Marks and trade dress are wholly associated with In-N-Out due to their long use, and therefore In-N-Out is deserving of having its IN-N-OUT Marks and trade dress adequately protected with respect to the conduct of its business.

## COUNT I
### Trademark Infringement Under Federal Law

32. In-N-Out repeats and realleges each and every allegation contained in paragraphs 1 through 31 of this Complaint and incorporates them herein.

33. By the aforesaid acts, Defendant has infringed upon In-N-Out's federal trademark rights described by its trademark registrations, in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Defendant's acts have been willful and in conscious disregard of the trademark rights of In-N-Out.

35. In-N-Out has suffered, is suffering, and will continue to suffer irreparable injury for which In-N-Out has no adequate remedy at law.

36. In-N-Out is entitled to a preliminary injunction to be made permanent upon entry of final judgment, preventing Defendant's further infringement.

37. Further, In-N-Out is entitled to damages and enhanced damages in amounts to be proven at trial.

## COUNT II
**Trademark Dress Infringement Under Federal Law**

38. In-N-Out repeats and realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint and incorporates them herein.

39. By the aforesaid acts, Defendants have infringed upon In-N-Out's federal rights in its trade dress described above, in violation of section 32 of the Lanham Act, 15 U.S.C. § 1125(a).

40. Defendants' acts have been willful and in conscious disregard of the trade dress rights of In-N-Out.

41. In-N-Out has suffered, is suffering, and will continue to suffer irreparable injury for which In-N-Out has no adequate remedy at law.

42. In-N-Out is entitled to a preliminary injunction to be made permanent upon entry of final judgment, preventing Defendants' further infringement.

43. Further, In-N-Out is entitled to damages and enhanced damages in amounts to be proven at trial.

## COUNT III
**Trademark Dilution under Federal Law**

44. In-N-Out repeats and realleges each and every allegation set forth in paragraphs 1 through 43 above as if fully set forth herein.

45. Due to the duration and extent of the use of the IN-N-OUT Marks, the advertising and publicity surrounding the same, the superior quality of the products and services on which the IN-N-OUT Marks have been used, and the degree of recognition associated with the IN-N-OUT Marks, the IN-N-OUT Marks are distinctive and famous within the meaning of 15 U.S.C. § 1125(c).

46. The aforementioned acts of Defendant constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

47. Defendant's acts have been willful and in conscious disregard of the trademark rights of In-N-Out.

48. In-N-Out has suffered, is suffering, and will continue to suffer irreparable injury for which In-N-Out has no adequate remedy at law.

49. In-N-Out is entitled to a preliminary injunction to be made permanent upon entry of final judgment, preventing Defendant's further infringement.

50. Further, In-N-Out is entitled to damages and enhanced damages in amounts to be proven at trial.

**WHEREFORE**, In-N-Out prays for judgment as follows:

1. That Defendant and its officers, agents, servants, employees, attorneys, and all persons in active concert or participating with any of them be preliminarily and thereafter permanently enjoined from using, in connection with their business affairs, the IN-N-OUT Marks or anything which so resembles the IN-N-OUT Marks so as to be likely to cause confusion, deception, or mistake, including, but not limited to, using its current Grab-N-Go logo and restaurant décor mirroring In-N-Out's restaurants, as previously described herein;

2. That Defendant be ordered to deliver up for destruction any and all materials in its possession, control or custody, including but not limited to, signs, packaging, forms, advertisements, business cards, letterheads, circulars, boxes, serving material and/or other representations and means for producing the same that make reference to or use any designation or mark that is confusingly similar to the IN-N-OUT Marks;

3.  An award of damages pursuant to 15 U.S.C. section 1117(a), including Defendant's profits, damages sustained by In-N-Out, and costs of the action;

4.  An award pursuant to 15 U.S.C. section 1117(b) of three times Defendant's profits as enhanced damages;

5.  For a finding this is an exceptional case pursuant to the Lanham Act and an award of reasonable attorney fees;

6.  Reasonable attorney fees, investigatory fees and expenses, together with pre-judgment interest; and

7.  Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury on all claims asserted.

Dated this 17th day of August, 2011.

                Respectfully submitted,

                _____*/S/*_____
                JOSHUA A. GLIKIN (#26852)
                glikin@bowie-jensen.com
                BOWIE & JENSEN, LLC
                29 W. Susquehanna Avenue, Suite 600
                Towson, Maryland  21204
                Tel:  (410) 583-2400
                Fax: (410) 583-2437

                *Attorneys for Plaintiff In-N-Out Burger*